UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **NEXT LEVEL HOSPITALITY L L C** | **CASE NO. 2:21-CV-04240** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **INDEPENDENT SPECIALTY INSURANCE CO** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM ORDER

Before the Court is "Defendant's Motion to Compel Arbitration" (Doc. 30) filed by Independent Specialty Insurance Company ("ISIC"). ISIC moves to stay the instant litigation in order to arbitrate the parties' dispute in Nashville, Tennessee.[1]

### INTRODUCTION

The suit involves an insurance dispute between a domestic insured and a single domestic surplus insurer for damages caused by Hurricanes Laura and Delta. Plaintiff, Next Level Hospitality, LLC owns a multi-purpose commercial property located in Lake Charles, Louisiana.[2] On or about August 27, 2020, Hurricane Laura made landfall near Lake Charles. On or about October 9, 2020, Hurricane Delta made landfall near Lake Charles.[3] During the relevant time period, ISIC insured Next Level's property; the policy was a surplus line coverage under the Insurance Code of the State of Louisiana.[4]

---

[1] Defendant's exhibit A, Policy, p. 27.
[2] Complaint, Doc. 1, ¶ 5.
[3] *Id.* ¶ 8.
[4] Doc. 30-2.

## LAW AND ANALYSIS

Next Level filed its original Complaint for Damages on December 9, 2021.[5] The case is set for trial on October 2, 2023. ISIC filed the instant Motion for Arbitration on March 10, 2023.

ISIC relies on the following Arbitration Clause in the subject policy:

All matters in dispute between you and us (referred to in this policy as "the parties") in relation to this insurance, including this policy's formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner described below.[6]

ISIC also relies on the what it suggests is a similar case involving a surplus lines insurer and policy, *Certain Underwriters at Lloyd's v. Belmont Commons L.L.C.,* No. 2:22-cv-3874, 2023 U.S. Dist. LEXIS 1521 (E.D. La. January 3, 2023), In *Belmont*, the court compelled arbitration of a Hurricane Ida claim even though the Plaintiff attempted to avoid the policy's arbitration provision. As noted by Next Level, the *Belmont* case as well as the majority of the cases cited by ISIC involved foreign insurers.[7] Such is not the cases here; ISIC is a domestic insurer.

ISIC argues that the Arbitration Clause must be enforced under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") because ISIC, as a surplus lines carrier, is specifically exempted

---

[5] Doc. 1.
[6] Defendant's exhibit A, Policy, p. 27.
[7] ISIC also cites *McDonnel Grp., LLC v. Great Lakes Ins.,* 923 F.3d 427, 432 (5th Cir. 2019); *Acad. of the Sacred Heart of New Orleans v. Certain Underwriters at Lloyd's London,* No. 22-4401, 2023 WL 246832 (E.D. La. Jan. 18, 2023); *Burk Holding Co. v. Mt. Hawley Ins. Co*., No. 22-3503, 2023 WL 183898 (E.D. La. Jan.13, 2023) (concluding that surplus line carriers are not subject to the requirements of La. R.S. § 22:868 only when a plaintiff seeks to invalidate a forum selection clause). This case did not involve an arbitration clause.

from the prohibitions of Louisiana Revised Statute § 22:868. Conversely, Next Level relies on a very recent ruling in *Bufkin Enterprises, LLC v. Indian Harbor Insurance Co., et al*, Civil action 2:21-4017, 2023 WL 2393700, wherein this Court denied defendant's motion to compel arbitration, concluding that the arbitration clause at issue is reverse-preempted by Louisiana Revised Statute § 22:868(A)(2).

The Court herein recites, in relevant part, that analysis as follows:

Louisiana law prohibits arbitration agreements in insurance policies covering property within the state. La. R.S. § 22:868(A)(2). Under the McCarran-Ferguson Act, state laws regulating insurance are shielded from the preemptive effect of federal law. 15 U.S.C. §§ 1011, 1012. Accordingly, McCarran-Ferguson allows state laws like Louisiana Revised Statute section 22:868(A)(2) to "reverse-preempt" the Federal Arbitration Act's provisions on the enforceability of insurance agreements. *See, e.g.*, *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490 (5th Cir. 2006). However, this "reverse preemption" applies only to "Acts of Congress" and not to treaties. *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 723 (5th Cir. 2009). The [Convention] is one such treaty and requires signatory nations to "'recognize an agreement in writing under which the parties undertake to submit to arbitration' their dispute 'concerning a subject matter capable of settlement by arbitration.'" *Id.* at 719 (quoting Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. II(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3)). State insurance law thus has no impact on arbitration

agreements arising under the Convention. *Id.* at 723–24; *see also McDonnel Group, LLC v. Great Lakes Ins. Branch SE, UK Branch*, 923 F.3d 427 (5th Cir. 2019).

### The Convention

Here, ISIC argues that the Convention applies because the Delegation Clause of the Arbitration Clause requires an Arbitration Panel, specifically referring to the above quoted provision of the Arbitration Clause.

ISC argues that the delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. ISIC also relies on the 1983 Supreme Court case of *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983) for the proposition that the United States, as evidenced by the FAA, has a strong, liberal policy favoring arbitration agreements. In 2022, the Supreme Court clipped the wings of the oft quoted "strong federal policy favoring arbitration" created by the FAA, explaining that the FAA's policy only makes arbitration agreements as enforceable as other contracts, but not more so, and does not permit federal courts to devise novel rules to favor arbitration over litigation. *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1712–13 (2022) ("Nine circuits, including the Eighth, have invoked "the strong federal policy favoring arbitration" in support of an arbitration-specific waiver rule demanding a showing of prejudice. Two circuits have rejected that rule. We do too."). Accordingly, arbitration provisions within a contract are on equal footing with other provisions and obtain no talismanic effect from the FAA.

In the Fifth Circuit, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (collecting cases) (internal quotations omitted).

ISIC also briefly raises the theory of equitable estoppel. In *Bufkin,* this Court determined that equitable estoppel was not warranted. The Court discussed the reasoning in the Fifth Circuit's holding in *Grigson v. Creative Artists Agency L.L.C*, which adopted the Eleventh Circuit's intertwined-claims test allowing a nonsignatory to compel arbitration under equitable estoppel in situations. 210 F.3d 524, 527 (5th Cir. 2000). The first situation when equitable estoppel applies is

> when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

*Id.* As to the second [estoppel] *Grigson* situation,

> equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson,* 210 F.3d at 527. In *Grigson*, a non-insurance, non-Convention case, the Fifth Circuit determined that the plaintiffs' claims in two actions "are intertwined with, and dependent upon, the distribution agreement, including, but not limited to, Defendants (non-signatories) and TriStar (non-defendant signatory) being charged with interdependent and concerted misconduct." *Id*. at 531. The Court pointed out that although the signatory was no longer a defendant, having been dismissed without prejudice from an earlier action, the current action and the earlier action "are the same. In essence, [the signatory] is a defendant." *Id*. at 530. Here, however there is no foreign signatory.

Likewise, in *Port Cargo*, under the second *Grigson* situation, the court compelled arbitration holding that "[a]llowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration." *Port Cargo*, 2018 WL 4042874, at *7. There the plaintiffs "allege[d] that the[] insurers all breached the terms of the policy together through the shared adjustor" and those insurer defendants included both nonsignatory domestic insurers and signatory foreign insurers. 2018 WL 4042874, at *7. Again, there is no foreign signatory here.

Accordingly, the Court is not inclined to apply the doctrine of equitable estoppel, and arbitration can only be compelled through the FAA. The Court thus considers whether clauses are reverse preempted by Louisiana Revised Statutes § 22:868.

***Reverse-preemption***

Louisiana Revised Statutes § 22:868 states:

> A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any group health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement either:
> (1) Requiring it to be construed according to the laws of any other state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other state or country.
>
> (2) Depriving the courts of this state of the jurisdiction or venue of action against the insurer.
>
> B. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state, or any health and accident policy insuring a resident of this state regardless of where made or delivered, shall contain any condition, stipulation, or agreement limiting right of action against the insurer to a period of less than twenty-four months next after the inception of the loss when the claim is a first-party claim, as defined in R.S. 22:1692, and arises under any insurance classified and defined in R.S. 22:47(6), (10), (11), (12), (13), (15), and (19) or to a period of less than one year from the time when the cause of action accrues in connection with all other insurances unless otherwise specifically provided in this Code.
>
> C. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
>
> D. The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance.

ISIC argues that Louisiana Revised Statutes section 22:868(A)(2) does not apply to the surplus lines polices between it and Next Level, thus, Louisiana law neither reverse-preempts the FAA nor prohibits enforcement of the Arbitration Clause. Next Level argues that Louisiana Revised Statue § 22:868(D) does not permit a domestic insurer to invoke and enforce an arbitration clause that would deprive a Louisiana court of jurisdiction,

and/or ISIC has waived its right to arbitration by waiting over a year since litigation commenced (and over two years post Hurricane) to compel arbitration.

On June 12, 2020,[4] the Louisiana legislature amended Section 22:868 to include Subsection D, which states: "The provisions of Subsection A of this Section shall not prohibit a forum or venue selection clause in a policy form that is not subject to approval by the Department of Insurance." Additionally, the Louisiana legislature added "venue" to the title of the revised statute as well as "or venue" to subsection (A)(2), which now states: "Depriving the courts of this state of the jurisdiction *or venue* of action against the insurer." Prior to the 2020 amendment, Louisiana courts held Section 22:868(A)(2) to reverse-preempt the FAA under McCarran-Ferguson; that is, it was treated as an anti-arbitration provision. *E.g.*, *Doucet v. Dental Health Plans Mgmt. Corp.*, 412 So.2d 1383, 1384 (La. 1982) ("Classification of the contract at issue as an insurance contract renders the arbitration provisions of that contract unenforceable under R.S. 22:629.") (La. R.S. § 22:629 was retitled La. R.S. § 22:868.).[8]

The question now is whether the text of Section 22:868(D), which addresses forum or venue selection clauses, extends to cover arbitration clauses. This question has not been ruled on by the Louisiana Supreme Court, therefore United States District Courts "must

---

[8] *See also Macaluso v. Watson*, 171 So.2d 755 (La. App. 4 Cir. 1965) (holding an arbitration agreement between and insurer and insured was void and unenforceable because it has the effect of depriving a court of jurisdiction to decide the issue of liability as well as quantum."); *Courville v. Allied Professionals Ins. Co.*, 218 So.3d 144, 148 (La. Ct. App. 1st Cir. 2017), *writ denied*, 228 So.3d 1223 (La. 2017) ("In Louisiana, compulsory arbitration provisions in insurance contracts are prohibited as a matter of public policy because they operate to deprive Louisiana courts of jurisdiction over actions against the insurer; further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the state's constitution."); *Hobbs v. IGF Ins. Co.*, 834 So.2d 1069, 1071 (La. Ct. App. 3d Cir. 2002) ("Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable under this statute because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer.").

make an 'Erie guess' and 'determine as best it can' what the Louisiana Supreme Court would decide." *Howe ex rel. Howe v. Scottsdale Ins. Co*., 204 F.3d 624, 627 (5th Cir. 2000) (quoting *Krieser v. Hobbs*, 166 F.3d 736, 738 (5th Cir.1999)). The "fundamental question in all cases of statutory interpretation is legislative intent and that the rules of statutory construction are designed to ascertain and enforce that intent." *Carollo v. Dep't of Transportation & Dev*., 346 So.3d 751, 759 (La. 2022) (quoting *M.J. Farms, Ltd. v. Exxon Mobil Corp*., 998 So.2d 16, 26–27 (La. 2008)).

The starting point in the interpretation of any statute is the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in the search of the intent of the legislature. However, when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. Moreover, when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. *Id*. at 759–760 (cleaned up).

***Creekstone Juban***

Before diving into the text Section 22:868, it is necessary to put some context around the amendment. On May 8, 2019, the Louisiana Supreme Court decided *Creekstone Juban I, L.L.C. v. XL Insurance America, Inc.* where the issue before the court was "whether La. R.S. 22:868(A)(2) prohibits the enforcement of the forum selection clause in dispute." 282 So.3d 1042, 1044 (La. 2019). The pre-amendment text of Section 22:868(A)(2) stated: "Depriving the courts of this state of the jurisdiction of action against the insurer." 2020

La. Sess. Law Serv. Act 307 (S.B. 156) (West). The court observed that the Louisiana Code of Civil Procedure article 1 "defines 'jurisdiction' as 'the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled.'" *Creekstone Juban*, 282 So.3d at 1047. Furthermore, the court explained that jurisdiction and venue are distinct legal concepts: "If jurisdictional requirements are met, courts throughout the state have the legal power and authority to hear the case; however, *not all courts with jurisdiction are in the proper venue.*" *Id.* (emphasis in original) (quoting *Turner v. Leslie*, 684 So.2d 395, 396 (La. 1996)). The Louisiana Supreme Court concluded that "where the parties have contracted for a particular forum or venue for litigating disputes, this does not mean they have deprived the courts of this state of the legal authority to hear the dispute (*i.e.*, the jurisdiction)." *Id.* Accordingly the Louisiana Supreme Court "decline[d] to extend the definition of "jurisdiction"—which is clearly defined in the Civil Code—to include "venue" or "forum." *Id.*

*Creekstone Juban*'s majority opinion prescinds arbitration clauses from its jurisdictional discussion. Justice Weimer's concurrence, however, does not and is instructive. *See Id.* at 1051. He agreed that forum selection clauses did not deprive courts of jurisdiction but that arbitration clauses did. *Id.* at 1052. Furthermore, Justice Weimer observed that "[i]n 1948, shortly after passage of [McCarron-Ferguson], the Louisiana Legislature took up Congress's invitation to reverse-preempt the FAA, passing the predecessor to La. R.S. 22:868 as part of the Insurance Code" and Louisiana "cases decided

after the enactment of [the predecessor to La. R.S. § 22:868] have confirmed its purpose as an anti-arbitration statute." *Id.*

### *Circumstances contemporary with amendment to § 22:868*

Under "the terse and admirable maxim of the civil law, '[c]ontemporanea expositio est fortissima in lege,'" *e.g.*, *State ex rel. Cunningham v. Bd. of Assessors of Par. of Orleans*, 52 La. Ann. 223, 238, 26 So. 872, 879 (1898), a statute must be considered in the light of all circumstances existing at the time of its enactment. In February 2020, just shy of ten months after *Creekstone Juban*, Louisiana Bill Digest indicated a proposed change to § 22:868.

Present law provides that no insurance contract made in the state of Louisiana shall contain any condition, stipulation, or agreement depriving the courts of this state of jurisdiction of action against the insurer. Proposed law provides that no insurance contract made in the state of Louisiana shall contain any condition, stipulation, or agreement depriving the courts of this state of **venue or** jurisdiction of action against the insurer. Louisiana Bill Digest, Original, 2020 Reg. Sess. S.B. 156 (emphasis added).

Thus, a proposed inclusion of "venue" into § 22:868 arose shortly after the Louisiana Supreme Court in *Creekstone Juban* reversed the trial court's denial of exception of improper venue, holding that pre-amendment § 22:868 did not prohibit enforcement of a forum selection clause. 282 So.3d at 1044, 1050. The effect of § 22:868 pre-amendment and post-*Creekstone Juban* was to preclude enforcement of arbitration clauses but not preclude forum and venue selection clauses because the former are jurisdictional whereas the latter are not. *See Creekstone Juban*, 282 So.3d at 1047 ("[Section 22:868's] plain

language addresses jurisdiction only and forum selection clauses do not deprive the Louisiana court of jurisdiction over the action.").

### Section 22:868's post-amendment effect

When a statute is clear and unambiguous and its application does not lead to absurd consequences, the provision must be applied as written, with no further interpretation made in search of the legislature's intent." *Auricchio v. Harriston*, 332 So.3d 660, 662–63 (La. 2021); La. Civ. Code art. 9; R.S. § 1:4 (2023). The added § 22:868(D) provides: "The provisions of Subsection A of this Section shall not prohibit *a forum or venue selection clause* in a policy form that is not subject to approval by the Department of Insurance." The subject of Subsection D's clause, "[t]he provisions of Subsection A," includes (A)(2)'s anti-arbitration provision. Subsection D's clause's active verb is "shall not prohibit." The objects of Subsection D's clause, "a forum or venue selection clause" thus carve out only a part of the Subsection A's prohibitory effect. Consequently, based on the clear nature of the text, the Court's interpretation of Subsection D is that its prohibitive effect on Subsection A is limited to only forum and venue selection clauses in surplus lines policies. What remains of Subsection A's effect post-amendment is the full extent of the law pre-*Creekstone Juban* minus forum and venue selection clauses found in surplus lines policies.

Based on the text of § 22:868, the Court cannot arrive at an interpretation that conflates arbitration clauses with forum and venue clauses; the former is jurisdictional whereas the latter are not. Thus, to read arbitration clauses into the text of Subsection D would be to confer a different meaning than intended by the legislators.

Here, there is no foreign insurer, thus the Convention does not apply. The Arbitration Clause at issue is reverse-preempted by Louisiana Revised Statutes § 22:868(A)(2). *See, e.g.*, *Am. Bankers Ins. Co. of Fla.*, 436 F.3d 490 (5th Cir. 2006).

## CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 30) filed by Independent Specialty Insurance Company ("ISIC") is **DENIED.**

**THUS DONE AND SIGNED** in Chambers on this 31st day of March, 2023.

_____
JAMES D. CAIN, JR.
UNITED STATES DISTRICT JUDGE